SMITH et al. v. BICKFORD & FRANCIS BELTING CO.

(District Court, W. D. New York. December 16, 1914.)

PATENTS ⟨⟩328—VALIDITY AND INFRINGEMENT—FIRE ALARM.

The Smith patent, No. 850,681, for a fire and temperature alarm for indicating a sudden, but not a gradual, rise in temperature, consisting of a small wire tube, closed at one end and having the open end in a closed chamber, in which a sudden and unusual increase of pneumatic pressure, due to a sudden expansion of the inclosed air, makes an electrical contact with an alarm device, while a vent permits the air to pass in and out slowly upon a gradual and ordinary variation of temperature, was not anticipated, and discloses patentable invention; also *held* infringed.

In Equity. Suit by George Lawrence Smith and the Aero Fire Alarm Company against the Bickford & Francis Belting Company. On final hearing. Decree for complainants.

Clifford E. Dunn, of New York City (Gerald E. Terwillinger, of New York City, of counsel), for complainants.

Griggs, Baldwin & Baldwin, of New York City (William Lawrence Marshall, of New York City, of counsel), for defendant.

HAZEL, District Judge. This action involves patent No. 850,681, granted to George L. Smith, April 16, 1907, for a fire and temperature alarm or indicator. The complainants are respectively the patentee and exclusive licensee of the invention, while the defendant is a user of a fire alarm system, which is an alleged infringement of the patent in suit, installed by the Automatic Fire Protection Company. By his invention the patentee has provided a pneumatic fire alarm which will automatically indicate a sudden, but not a gradual, rise in temperature at any part of the room or rooms in which the apparatus is placed, or through which the leads pass, irrespective of the original temperature of the room or rooms. The device is operated by the expansion of air in a wire tubing of exceedingly small diameter and bore, which is strung along the ceiling of the protected area, due to a rise of temperature, resulting from fire. The tubing is closed at one end, and at the other connected to an electric contact apparatus, which closes its circuit whenever the pressure of the air in the tube increases. The specification states that the apparatus must be so constructed that the electrical contacts may be placed outside the area where the sudden rise of temperature takes place, or is likely to take place. The patent has two claims, of which the first only is in controversy, and which reads as follows:

"1. In fire and temperature alarms, the combination of a metal tube of small diameter having a correspondingly small bore containing air and closed at one end, a closed chamber with the interior of which the open end of the tube communicates, said tube having a vent for permitting air to pass slowly to and from the bore of the tube upon a gradual and ordinary variation of temperature, and means for regulating said vent, two electrical contacts, means operated by a sudden and unusual increase of pneumatic pressure in the tube and chamber for mechanically closing said contacts, an electrical conductor having its ends respectively electrically connected to said contacts,

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and an electric battery and an alarm device located in the electric circuit composed by a conductor aforesaid, substantially as set forth."

It is not claimed that the patentee was the first to devise means for automatically indicating fire within a building, or within the limits of a certain area. There concededly were other fire alarm systems, but, according to the evidence, they were objectionable for one reason or another, failing to operate successfully, and in none of them did the sounding or nonsounding of the alarm depend upon the rate of rise of temperature as distinguished from the height of temperature reached. Before the invention in suit it was regarded as a rather difficult problem to devise means which would respond to the rate of rise of temperature, rather than to a predetermined height of temperature, and quickly sound an alarm; but Smith conceived such means, the adaptation of which obviated difficulties and objections to which fire alarm systems then extant were subject. The utility of this invention, which made an ingenious advance in the art, is, I think, beyond question.

Claim 1 is for a combination of old and new elements, including, besides the current, electric contacts, a battery, a sounder, and a heat-collecting member, together with a heat pressure detecting device. The heat collector comprises the small bore tubing, already mentioned, and its communicating connections; while the heat pressure detecting medium comprises a vent for the tube chamber, means for regulating it, and a diaphragm to assist in closing the circuit by air pressure. In complainants' commercial form of apparatus, which substantially embodies the combination in suit, there is contained an air vent, consisting of a small hole in the wall of the passage 5 with which it communicates, which is controllable or adjustable by a screw flattened on one side, with a porous washer between the screw head and shaft, which serves to let the air pass slowly to and from the tube during a gradual change of temperature.

The defenses are anticipation, limitation of claim 1, and noninfringement. A brief consideration of two prior patents, only, will be necessary. The Cuttriss patent embodies, true enough, the principle of the rate of rise of temperature; but I am doubtful of its successful operation. Among other things which distinguish it from the Smith patent in suit is the omission of metallic tubing of small bore, closed at one end, in connection with a closed expansible chamber. Such tubing and connection were essential features of complainants' combination, without which it would have been impossible for the apparatus to operate successfully. In the Cuttriss patent a rate of rise of temperature device was adapted upon a thermostatic structure, which sent in an alarm when the temperature reached 120 degrees Fahrenheit, or when the temperature rose faster than one degree per minute.

In the Vander Weyde patent, in evidence, the object was to obtain a fixed temperature thermostatic alarm without using an electric circuit. The alarm signal was operated when the temperature reached 150 degrees Fahrenheit in the vicinity of the various thermostats with which the iron tubing was connected, and consisted of spring-actuating plunger pumps. Although the specification indicates tubes, yet, as such tubes were used to enable pumping air through them, they were

manifestly not tubes of small bore, such as are described in the Smith specification. There were apertures or pinholes in the tubes of the Vander Weyde structure, enabling the air to diffuse through them during changes in temperature; but, as testified to by Waterman, no means are disclosed for regulating the air so as "to discriminate between different rates of rise of temperature." Nor were the tubes of the earlier patent heat collectors, performing the function of the heat collectors in suit; and I think that, notwithstanding the usefulness of that system, it was impracticable as a so-called rate of rise of temperature fire alarm system, and therefore did not limit the scope of claim 1 or anticipate the patent under consideration.

While the Patent Office was probably right in holding that there was no invention in the addition of a tube with a small bore to a combination of old elements, inasmuch as no new function was performed (see Westinghouse patent in evidence), even assuming that claim 1 was limited to a fire alarm having a regulation for the air vent, I am nevertheless of the opinion that the combination has such merit as to entitle it to something more than a limitation to the precise means shown for the regulation of the air vent. The defendant has not omitted air vent regulation from his apparatus. It is true he employs for this purpose neither a screw, flattened on one side, nor a porous washer, but has adapted, instead, a glass tube with a capillary passage of such dimensions as permits only a predetermined amount of air to flow to or from the air passage. At first blush this arrangement might seem to operate upon a different principle from complainants'; but on examination it is evident that its function is precisely that of the air vent described in the patent in suit, and that by such adaptation in combination with the other elements of claim 1 defendant achieves the same result as do complainants.

It is not necessary to discuss the evidence relating to the conduct of the individuals, McElroy and Shepherd, who, after receding from negotiations with the patentee for the purchase of his patent, organized the company herein claimed to manufacture the infringing apparatus. Its character is such that this court is not inclined to adopt an unnecessarily strict construction of the claim in suit in order to relieve them. Kampfe et al. v. Reichard (C. C.) 105 Fed. 622.

Claim 1 of the Smith patent in suit is, in my judgment, valid, and infringed by the defendant company; and a decree for an injunction and an accounting may be entered, with costs.